**Johnny QUINONES–RUIZ, Plaintiff,**

v.

**UNITED STATES of America, the U.S. Customs Service, and Does 1 Through 10, Inclusive, Defendants.**

**No. 94–0050 (BTM).**

United States District Court, S.D. California.

Jan. 6, 1995.

Alan D. Bersin, U.S. Atty., Donald D. Clausen, Asst. U.S. Atty., San Diego, CA, for the U.S.

John F. Cherry, San Diego, CA, for plaintiff.

## ORDER GRANTING THE UNITED STATES' MOTIONS FOR RECONSIDERATION AND FOR SUMMARY JUDGMENT [DOC. # 20]

GONZALEZ, District Judge.

The United States' motion for reconsideration came on regularly for hearing on January 3, 1995, at 10:30 a.m., in Courtroom 11 of the above-entitled court, the Honorable Irma E. Gonzalez, District Judge, presiding. Donald D. Clausen, Esq., appeared on behalf of the United States. John F. Cherry, Esq., appeared on behalf of plaintiff Johnny Quinones–Ruiz.

## I

### BACKGROUND

On April 23, 1993, Johnny Quinones–Ruiz was leaving the United States as a passenger

in a car. At a customs checkpoint, a customs official asked if he was carrying more than $10,000. He answered no. Customs nonetheless decided to search the car and found a plastic bag containing $40,420 in currency.

Shortly afterwards, Mr. Quinones–Ruiz was indicted under 31 U.S.C. § 5324(b), Failure to File Report, and 18 U.S.C. § 1001, False Statement. In August 1993, he pleaded guilty to one count of false statement. Also in the summer of 1993, the Customs Service forfeited his currency administratively pursuant to 31 U.S.C. § 5317.

In November 1993, Mr. Quinones–Ruiz filed a late petition for return of his currency with the Customs Service. That petition was denied. On January 11, 1994, he filed a complaint in this Court under 5 U.S.C. § 704 seeking return of the money seized. He contended that he had received insufficient notice, that he had been searched without probable cause, and that the forfeiture violated the Excessive Fines and Double Jeopardy Clauses.

On September 23, 1994, this Court granted summary judgment to Mr. Quinones–Ruiz on the ground that the forfeiture had subjected him to double jeopardy. The Court also held at that time that his rights to notice and to freedom from unreasonable searches were not violated. *Quinones–Ruiz v. United States,* 864 F.Supp. 983 (S.D.Cal.1994). On October 7, 1994, the United States filed a motion for reconsideration of the September 23 order.

## II

## DISCUSSION

### A. Federal Jurisdiction

The parties do not dispute the existence of federal jurisdiction, but the Court must inquire into it sua sponte. Mr. Quinones–Ruiz filed suit under 5 U.S.C. §§ 702 and 704. Those provisions permit a district court to review the constitutionality of a forfeiture if (1) the claimant is seeking only return of the property, not money damages, and (2) there is no adequate remedy in another forum. *See United States v. Clagett,* 3 F.3d 1355, 1356 (9th Cir.1993); *Marshall Leasing Inc. v. United States,* 893 F.2d 1096, 1099–1100 (9th Cir.1990).

█ Here, Mr. Quinones–Ruiz is seeking only return of the forfeited property, so he meets the first part of the test. However, there is a question as to whether the Customs Service claim procedure was an adequate remedy in another forum. *See Clagett,* 3 F.3d at 1356 n. 1 ("[I]f notice was adequate the forfeiture proceeding provided an adequate legal remedy and Clagett will not be entitled to equitable relief."). The Court finds that under the circumstances of this case, Mr. Quinones–Ruiz did not receive sufficient notice to make the Customs Service claim procedure an adequate remedy in another forum.[1] There is thus jurisdiction over Mr. Quinones–Ruiz's claims.

### B. Propriety of Reconsideration

█ Mr. Quinones–Ruiz contends that there is no legal basis for allowing reconsideration of the order. One reason for permitting reconsideration under Rule 59(e) is an intervening change in controlling law. *School Dist. No. 1J v. ACandS Inc.,* 5 F.3d 1255, 1263 (9th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 2742, 129 L.Ed.2d 861 (1994). The case *United States v. $405,-089.23 U.S. Currency,* 33 F.3d 1210 (9th Cir. 1994), which came to the Court's attention

---

1. This is not inconsistent with the holding of the prior order that the notice did not violate Mr. Quinones–Ruiz's due process rights. Due process required the Customs Service to make reasonable efforts to give Mr. Quinones–Ruiz notice. Due process did not require that those efforts succeed, and they apparently did not. The adequacy of the alternative forum, in contrast, depends on whether Mr. Quinones–Ruiz in fact received the notice.

In *Marshall Leasing,* the Ninth Circuit also considered whether a suit for money damages in the Court of Federal Claims was an adequate alternative remedy. 893 F.2d at 1100–02. Since *Marshall Leasing* was decided, the Court of Federal Claims has held that "[t]he proper remedy for an unlawful forfeiture proceeding is a suit for the return of the property. The Court of Federal Claims is not empowered to grant equitable relief of this kind." *Perry v. United States,* 28 Fed.Cl. 82, 85 (1993). Consequently, Mr. Quinones–Ruiz has no alternative remedy in the Court of Federal Claims either.

after oral argument on the prior motion, was such a change. Mr. Quinones–Ruiz contends that the holding of that case followed from prior precedent and thus was not really a change, but the Court finds that it was enough of a change to justify a motion for reconsideration.

Mr. Quinones–Ruiz also contends that because the change in controlling law was unfavorable to the United States, the United States may not move for reconsideration on the basis of that change. However, the Court applied the new rule to decide the prior motion against the United States. The United States did not have an opportunity to argue how broadly or narrowly the new rule should apply. For this reason, it is proper to give the United States that opportunity in a motion for reconsideration.

### C. Double Jeopardy

#### 1) Guilty Plea and Forfeiture Based on Different Offenses

The United States contends that there was no double jeopardy in this case because the offense Mr. Quinones–Ruiz pleaded guilty to, making false statements, was different from the offense on which forfeiture was based, failure to report.

■■■ A forfeiture may proceed in spite of a criminal prosecution in which jeopardy attached if the forfeiture is based on a different offense. *United States v. One 1978 Piper Cherokee Aircraft*, 37 F.3d 489, 495 (9th Cir. 1994). For double jeopardy purposes, failure to report is a different offense from making false statements. *United States v. Woodward*, 469 U.S. 105, 108, 105 S.Ct. 611, 612, 83 L.Ed.2d 518 (1985) (per curiam).

Mr. Quinones–Ruiz concedes that false statements and failure to report are different offenses, but argues that jeopardy also attached on the counts that were dismissed, including failure to report. In effect he is saying that the plea bargain was a "package deal."

**2.** In support of his view that jeopardy attaches to counts dismissed on a plea bargain, Mr. Quinones–Ruiz cites language from *United States v.*

■■■ However, jeopardy does not attach when a count is dismissed pursuant to a plea bargain. *United States v. Vaughan*, 715 F.2d 1373, 1377 (9th Cir.1983) (not cited by either party). In *Vaughan*, the defendant had been charged in 1977 with a conspiracy count, which was dismissed pursuant to a plea bargain. In 1982, he was charged with two other conspiracy counts. He alleged that those counts were based the same conspiracy as the 1977 count, and thus barred by double jeopardy. *Id.* at 1374–75. However, the Ninth Circuit held that jeopardy did not attach when the 1977 conspiracy count was dismissed pursuant to the plea bargain. *Id.* at 1376–77.[2] The court pointed out that the defendant's remedy, if he believed the 1982 prosecution was barred by the 1977 plea bargain, was to seek enforcement of that plea bargain. *Id.* at 1377 n. 1; *see also United States v. Partida–Parra*, 859 F.2d 629, 633 (9th Cir.1988) ("Where the government breaches a plea bargain, it may be appropriate for the court to order 'specific performance' of the bargain.").

■■■ In this case, then, jeopardy attached only as to the false statements count when Mr. Quinones–Ruiz pleaded guilty. Because the forfeiture was based on the failure to report count, which is a different offense, the forfeiture was not barred by double jeopardy.

#### 2) Waiver of Double Jeopardy

The United States also contends that Mr. Quinones–Ruiz waived his double jeopardy claim, citing *United States v. Broce*, 488 U.S. 563, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989). Defendants there pleaded guilty to two conspiracy charges. They later sought to attack one of the guilty pleas, claiming that there had been only one conspiracy rather than the two which were charged. The Supreme Court held on waiver grounds that such collateral attack was impermissible unless the double jeopardy problem was visible on the face of the indictments. *Id.* at 575–76, 109 S.Ct. at 765–66.

*McCaslin*, 863 F.Supp. 1299 (W.D.Wash.1994), but that case involved a defendant who was convicted on all counts of his indictment.

■ Here, there was only one guilty plea, the one to the false statements charge. Mr. Quinones–Ruiz has indeed waived any nonfacial double jeopardy attack on that charge under *Broce.* However, he did not "plead guilty" to the forfeiture, but merely failed to contest it in time. That failure to contest is in some ways analogous to making a guilty plea. However, the failure to contest is not surrounded by procedural protections designed to ensure voluntariness, as a guilty plea is. For that reason, the failure to contest should not be considered to waive double jeopardy attacks in the way that a guilty plea waives them.

Furthermore, the rule of *Broce* does not apply where the double jeopardy problem is visible on the face of the indictments. That appears to be the case here, since the forfeiture and the failure to report count of the indictment were on their face based on violations of the same statute, 31 U.S.C. § 5324(b).

### 3) *Uncontested Administrative Forfeiture*

The United States contends that Mr. Quinones–Ruiz did not suffer jeopardy in his forfeiture because it was an uncontested administrative forfeiture, and jeopardy does not attach in such forfeitures. Because it is not necessary to reach this difficult issue, the Court declines to address it.

### D. *The Excessive Fines Clause*

It remains to be determined whether Mr. Quinones–Ruiz's forfeiture was barred by the Excessive Fines Clause.

### 1) *Test for Excessive Forfeitures*

■ In *Austin v. United States,* ⸺ U.S. ⸺, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), the Supreme Court held that punitive forfeitures are subject to the Excessive Fines Clause. The Court stands by its prior holding that the forfeiture at issue here was punitive in the sense of *Austin.*

The Supreme Court in *Austin* did not state any test for deciding when a forfeiture is an excessive fine, leaving that task to the lower courts. *Id.* at ⸺, 113 S.Ct. at 2812. Since *Austin,* dozens of courts have addressed this issue, but unfortunately the Ninth Circuit is not one of those courts. *See, e.g., United States v. 24124 Lemay St.,* 857 F.Supp. 1373, 1379–80 (C.D.Cal.1994) (collecting cases); *United States v. 427 Hall St.,* 853 F.Supp. 1389, 1396–98 (M.D.Ala.1994) (same). The criteria applied in those decisions are difficult to synthesize. The most important factors appear to be: (1) the *nexus* between the forfeited property and the offense, and (2) *proportionality* between the value of the forfeited property and the gravity of the culpable conduct. *See 427 Hall St.,* 853 F.Supp. at 1399 (adopting a test considering both these factors).

The Ninth Circuit applied the Eighth Amendment to in personam forfeitures before *Austin. See United States v. Busher,* 817 F.2d 1409, 1414 (9th Cir.1987). In doing so, it invoked the proportionality standard of *Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). It also held, in the context of RICO forfeiture of a business, that a district court should consider the extent to which the racketeering "infected" the forfeited business. *Busher,* 817 F.2d at 1415. This appears to be an endorsement of the nexus factor mentioned above. There is some question as to whether the Ninth Circuit would stick to *Busher* today.[3] For lack of

---

**3.** There are two reasons for this. First, other courts are putting heavier emphasis on the nexus between the property and the crime than on proportionality. *See, e.g., United States v. Chandler,* 36 F.3d 358, 365 (4th Cir.1994) (adopting a multifactor test focusing primarily on nexus); *United States v. 6625 Zumirez Drive,* 845 F.Supp. 725, 730 n. 2, 732 (C.D.Cal.1994) (using a test with three factors, two of which focus on nexus; test does not significantly rely on value of property forfeited).

Second, the continuing validity of *Solem* is questionable after *Harmelin v. Michigan,* 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991). Five justices there disapproved the *Solem* three-factor test. *See id.* at 1005, 111 S.Ct. at 2707 (Kennedy, J., joined by O'Connor & Souter, JJ.) (*Solem* factors should only be applied after a threshold finding of "gross disproportionality"); *id.* at 965, 111 S.Ct. at 2686 (Scalia, J., joined by Rehnquist, C.J.) (rejecting *Solem* and proportionality altogether). However, two of the five justices who rejected *Solem* stated that their reasoning was limited to the Cruel and Unusual Punishments Clause and did not extend

better authority, however, this Court elects to follow *Busher* and view it as endorsing a test that considers both proportionality and nexus.

### 2) *Proportionality*

A fine as high as $250,000 can be imposed for a single failure to report. 31 U.S.C. § 5322(a). No reported case has ever struck down such a fine on Excessive Fines Clause grounds. *Cf. United States v. O'Banion,* 943 F.2d 1422, 1426, 1432–33 (5th Cir.1991) (rejecting an Eighth Amendment challenge to a $20,000 fine, four years' probation, and 120 days of home confinement for failure to report). The United States Sentencing Guidelines assign a base offense level of 11 to Mr. Quinones–Ruiz's failure to report, permitting a fine between $2,000 and $20,000, in addition to a prison sentence. *See* U.S.S.G. §§ 2S1.3(a), 2F1.1(b)(1)(F), 5E1.2(c)(3). The harm which the failure to report statute attacks, the cash-based underground economy which avoids taxes and facilitates money laundering, is serious and is seen as justifying these harsh penalties. This leads to the conclusion that the $40,420 that Mr. Quinones–Ruiz forfeited was not out of proportion to the gravity of the failure to report.

It might be argued here that a comparison between the fines authorized by 31 U.S.C. § 5322(a) or the Sentencing Guidelines and Mr. Quinones–Ruiz's $40,420 forfeiture is inappropriate, because the fines are only imposed after a criminal trial or guilty plea, whereas forfeiture can be imposed on the basis of probable cause. In *United States v. 6625 Zumirez Drive,* 845 F.Supp. 725, 732–33 (C.D.Cal.1994), the court held that, in the Excessive Fines Clause context, the seriousness of an offense must be discounted if the government is merely seeking to forfeit based on probable cause and the claimant has not been convicted of the offense.

This discounting rule makes some sense, given that there is a lower probability that the offense really took place if its occurrence

was established under a weaker burden of proof. However, the Court elects not to adopt the discounting rule, for two reasons. First, it is not clear how a court would carry out the discounting process in practice. Second, in many probable cause forfeitures, the government actually has strong evidence of guilt. Adoption of the discounting rule would force the government to put on that evidence in order to insulate the forfeiture from Excessive Fines Clause attack. In effect, the discounting rule would eliminate the Congressionally mandated probable cause forfeiture scheme.

### 3) *Nexus Between Property and Crime*

The Court finds here that there is a medium nexus between the property and the crime. The essence of the crime here was lying to the government. The money was not an instrumentality of the crime, in the sense that Mr. Quinones–Ruiz did not keep $40,420 in cash in order to lie about it.[4] Nor was the property contraband, in the sense that there is nothing intrinsically wrong with having large amounts of cash on hand. The money, however, was the subject matter of the lie. Because of this, the Court finds that the nexus requirement of the Excessive Fines Clause is met.

In summary, the Court finds that the forfeiture at issue here did not violate Mr. Quinones–Ruiz's constitutional rights. For this reason, summary judgment is **GRANTED** in favor of the United States.

**IT IS SO ORDERED.**

---

to the Excessive Fines Clause. *Id.* at 978 n. 9, 111 S.Ct. at 2693 n. 9.

**4.** Here the Court disagrees with *United States v. $145,139 United States Currency,* 18 F.3d 73, 75

(2d Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 72, 130 L.Ed.2d 27 (1994), which stated that "we would be blinking reality if we held that the money in the instant case was anything less than an instrumentality."